IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **LUIS LOPEZ and AMBIORIS JIMENEZ** individually and behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, LLC,**<br><br>*Defendants.* | No.<br><br><br><br>**CLASS ACTION COMPLAINT** |

## I.  INTRODUCTION

1.  Plaintiffs Luis Lopez and Ambioris Jimenez (collectively, "Plaintiffs") bring this class action on behalf of themselves and a class of persons similarly situated, who have worked as delivery drivers for Defendants National Freight, Inc. and NFI Interactive Logistics, LLC (collectively "NFI" or "Defendants") since 2019, who performed delivery services out of NFI's warehouses in Nazareth Pennsylvania to Trader Joe's stores along the Eastern Seaboard, who were classified as independent contractors rather than employees, and whose Independent Contractor Operating Agreements with NFI contained Texas choice of law and forum selection provisions. Plaintiffs allege that although Defendants classified them and other similarly situated delivery drivers as independent contractors, they were in fact Defendants' employees for the purposes of the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq*. As a result of Defendants' practice of improperly classifying its delivery drivers as independent contractors, the delivery drivers have been subject to improper deductions from their pay, in

1

violation of the PWPCL, and have otherwise been unjustly forced to bear the costs of NFI's business. Additionally, although NFI purports to pay Plaintiffs and Class Members on the basis of miles operated, NFI does not actually pay them for all miles operated, meaning that NFI has not paid Plaintiffs and Class Members for all wages earned in violation of the PWPCL. NFI's failure to pay Plaintiffs and Class Members for all miles operated also constitutes breach of contract under Pennsylvania common law. Finally, NFI through its conduct, NFI has been unjustly enriched under Pennsylvania common law.

2. The Independent Contractor Operating Agreement, which each Plaintiff was required to sign in order to work for Defendants, includes a forum selection clause requiring all disputes to be brought in the state or federal courts serving Dallas County, Texas. Additionally, the Independent Contractor Operating Agreement includes a choice of law provision stating that Texas law governs. Plaintiffs assert that Pennsylvania law governs their claims against NFI notwithstanding the Texas choice of law provision, because Plaintiffs and Class Members worked in Pennsylvania every day, and because Texas law does not provide for a private right of action to recover the type of unpaid wages that Plaintiffs seek to recover in this case. See Brown v. Joseph Cory Holdings, LLC, 2014 WL 12585674, at *1-2 (N.D. Tex. July 30, 2014) ("As another federal court observed, 'Chapter 61 of the Texas Payday Act does not expressly provide a private right of action,' nor is such a right implied by the provisions of Chapter 61.") (quoting Ihegword v. Harris Cnty. Hosp. Dist., 929 F. Supp. 2d 635, 669 (S.D. Tex. 2013)).[1]

---

[1] The Texas Supreme Court has adopted the Restatement of Conflict of Laws (Second), Section 187's framework for determining whether a choice of law agreement is enforceable. See McKissock, LLC v. Martin, 267 F. Supp. 3d 841 (W.D. Tex. 2016). Under Section 187(2), the chosen choice of state law must not only have a substantial connection to the case, it must not violate the public policy of the state having the more substantial relationship to the parties – in this case Pennsylvania. See Portillo v. Nat'l Freight, Inc., 323 F. Supp. 3d 646, 651-52 (D.N.J. 2018) (citing Instructional Systems, 130 N.J. at 342).

3.  Plaintiffs are also class members in Portillo et al. v. National Freight, Inc. et al., Civ. Act. No. 15-cv-7908-JHR-MJS (D.N.J.), which is currently pending in the United States District Court for the District of New Jersey before Judge Joseph H. Rodriguez. In Portillo, the delivery drivers have alleged that NFI misclassified its drivers under New Jersey law, and as a result, violated the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. § 34:11-4.1 *et seq*. See Portillo, Civ. Act. No. 15-cv-7908-JHR-MJS, First Am. Compl. ¶¶ 19-44, Dkt. 102 (D.N.J. Aug. 13, 2018). The court certified a class in Portillo on July 1, 2020. See Portillo v. National Freight, Inc., 336 F.R.D. 85, 88-98 (D.N.J. 2020). The court limited the class to drivers who had signed pre-2019 versions of NFI's Independent Contractor Operating Agreement,[2] because NFI had replaced the New Jersey choice of law and forum selection provisions in its agreements with Texas choice of law and forum selection provisions beginning in 2019. See id. at 88. This class action is thus brought on behalf of the drivers who worked for NFI in 2019 or later and have signed the version of NFI's Independent Contractor Operating Agreement that contains Texas choice of law and forum selection provisions.

---

Moreover, Pennsylvania has a strong public policy to protect workers who performed even just minimal work in Pennsylvania by bringing them under the purview of Pennsylvania's wage and hour laws. Crites v. Hoogovens Technical Services, Inc., 2000 WL 356696, at *1-2 (Pa. Ct. of Com. Pls. 2000) (The WPCL's "broad definition of 'employer' indicates that our General Assembly intended to bring all employers within the scrutiny of the WPCL unless to do so would yield an unreasonable or absurd result."). In stark contrast, Texas does not even provide for a private right of action to recover unpaid wages. See Brown, 2014 WL 12585674, at *1-2. Application of Texas law would thus violate Pennsylvania public policy.

[2]  The court later clarified that there were at least 33 drivers (including the named Plaintiffs in this matter) who had previously signed a pre-2019 version of NFI's agreement that had a New Jersey choice of law and forum selection clause and later signed a post-2019 version of NFI's agreement that contained a Texas choice of law and forum selection clause. See Portillo v. National Freight, Inc., 2021 WL 3486894, at *3 (D.N.J. Aug. 9, 2021). The court held that these drivers were members of the class and could recover damages for NFI's violations of the NJWPL for the period of June 22, 2009, to the date that they signed the version of NFI's agreement that included the Texas choice of law and forum selection provisions. See id. at *6.

3

## II.     PARTIES

4.     Defendant National Freight, Inc. ("National Freight") is a corporation organized under the laws of the State of New Jersey with its headquarters in Camden, New Jersey.

5.     Defendant NFI Interactive Logistics, LLC ("NFI Logistics") is a corporation organized under the laws of New Jersey with its headquarters in Camden, New Jersey.

6.     Upon information and belief, Defendants are the same business, operating out of the same principal place of business. Defendants are operated by the same individuals and have common ownership.

7.     Luis Lopez is an adult resident of Stroudsburg, Pennsylvania.  Mr. Lopez has worked for NFI from approximately August 2016 to the present as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

8.     Ambioris Jimenez is an adult resident of Reading, Pennsylvania.  Mr. Jimenez worked for NFI from approximately September 2009 to September 2021 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

## III.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). The putative class consists of at least 30 proposed class members. The citizenship of at least one member of the proposed Class is diverse from that of at least one Defendant, as each of the Plaintiffs are residents of different states than that of NFI. Upon information and belief, the amount in controversy in this action exceeds $5,000,000.

10. This Court has personal jurisdiction over the parties to this action pursuant to the forum selection provision of the Independent Contractor Operating Agreement between Plaintiffs and NFI.

11. Venue in this Court is appropriate pursuant to the forum selection provision of the Independent Contractor Operating Agreement between Plaintiffs and NFI. Additionally, NFI maintains places of business in Dallas County, Texas. Therefore, venue in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391(b).

## IV.   STATEMENT OF FACTS

12. NFI is a leading provider of transportation, logistics and distribution services, providing its services to companies such as Trader Joe's Markets, a national grocery chain. NFI delivers goods from Trader Joe's warehouses to various Trader Joe's stores throughout the East Coast. In order to perform those services, NFI utilizes both employee drivers as well as drivers whom it purports to classify as independent contractors, such as Plaintiffs and Class Members. The employee drivers performed the same job duties as Plaintiffs and Class Members.

13. In order to work for NFI Plaintiffs signed NFI's Independent Contract Operating Agreements, which contained the choice of law and forum selection clauses stating as follows: This agreement shall be interpreted in accordance with and governed by the laws of the United States and the State of Texas, without regard to the choice-of-law of Texas or any other jurisdiction. The PARTIES FURTHER AGREE THAT ANY CLAIM OR DISPUTE ARSISING [sic] FROM OR IN CONNECTION WITH THIS AGREEMENT OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP BETWEEN THE PARTIES, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW, (INCLUDING BUT NOT LIMITED TO

49 C.F.R. PART 376), SHALL BE BROUGH [sic] EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN DALLAS COUNTY, TEXAS, CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

14. Trader Joe's has distribution center warehouses in Nazareth, Pennsylvania, from which drivers working for NFI pick up and deliver merchandise to Trader Joe's stores in New Jersey, Massachusetts, Maine, New Hampshire, Rhode Island, Connecticut, Delaware, New York, Pennsylvania, Maryland, Virginia, Washington D.C., North Carolina, and other states. NFI has office space and employees in the lots outside the warehouses, from which NFI's employees direct the drivers' work.

15. Plaintiffs and Class Members were required to have their own trucks to perform delivery services. NFI requires that all trucks bear the NFI logo and operate under its Department of Transportation Number.

16. The trailers, which the drivers pick up at NFI's warehouses are also embossed with NFI's logos and owned by NFI.

17. Plaintiffs and Class Members have been entirely dependent upon NFI for their business, as they were not permitted to perform delivery services for any other company during their time working for NFI.

18. Plaintiffs and Class Members generally worked full time, five or six days per week, 12 to 14 hours per day, and would report to NFI's warehouses each day to pick up the trailers full of merchandise (or in the case of drivers who used box trucks, to have their box trucks loaded). Upon information and belief, employees of NFI would load the merchandise. Also present at the NFI distribution center were employee drivers of NFI who would also pick up trailers for delivery

to local Trader Joe's stores.

19.   Plaintiffs and Class Members were assigned a set route each day and given a schedule which indicated the "pull time," which was the time that they were supposed to depart from the NFI warehouses, in order to make deliveries. Plaintiffs and Class Members were required to arrive at the NFI warehouse sufficiently prior to their listed pull time, typically at least thirty minutes. NFI would constantly call Plaintiffs and Class Members on their cellphones if they were not at the NFI warehouse early enough. The schedule provided to Plaintiffs and Class Members also listed a delivery time for each stop. Plaintiffs and Class Members were not allowed to deviate from the schedule. Plaintiffs and Class Members' movements were monitored by NFI dispatch via a GPS system. NFI required Plaintiffs and Class Members to install the GPS system into their trucks.

20.   Plaintiffs and Class Members were paid per mile and received additional compensation for fuel surcharges dependent upon the price of fuel. Plaintiffs and Class Members could not negotiate the price paid per mile or the price paid for fuel surcharges. Often times, NFI would delay increases in the fuel surcharge amounts for several weeks when the cost of fuel increased. When the cost of fuel decreased, the fuel surcharge amounts would be immediately calculated.

21.   Despite executing a contract with Plaintiffs and Class Members, promising to pay drivers for all miles operated by the drivers, NFI would frequently pay Plaintiffs and Class Members for fewer miles than they had actually driven each day. More often than not, NFI would not pay drivers for *actual* miles they drove but, a pre-determined figure, determined by NFI.

22.   Plaintiffs and Class Members were also responsible for returning merchandise to

NFI's Nazareth distribution centers from Trader Joe's stores. Often, Plaintiffs and Class Members were not paid for such work. In addition, NFI dispatchers would direct Plaintiffs and Class Members to pick up merchandise outside their set routes and would not pay them accordingly. Plaintiffs and Class Members were also required to attend safety meetings and other company meetings that did not always result in additional pay for the drivers.

23.     Plaintiffs and Class Members were required to pay for their own workers' compensation insurance, liability insurance and other job-related insurance. These amounts were deducted from Plaintiffs' and Class Members' weekly settlement statements by NFI. In addition, NFI required all drivers, including Plaintiffs and Class Members, to place monies into an escrow account purportedly to cover damage claims made by third parties. NFI agreed to return these amounts to Plaintiffs and Class Members 45 days after they ceased driving for NFI.

24.     Plaintiffs and Class Members were also required to use the GPS system that NFI used to track deliveries. Plaintiffs and Class Members were required to purchase this system and have weekly amounts deducted from their settlement statements to pay for same.

25.     While NFI classified Plaintiffs and Class Members as "independent contractors," the nature of the services that Plaintiffs and Class Members performed, and the manner in which they performed these services, made it clear that they were actually employees. NFI was in complete control of the manner in which Plaintiffs and Class Members and others performed their services.

26.     Plaintiffs and Class Members performed services, pickup and delivery of products and material, which was/is within the usual course of business of NFI.

27.     For example, Plaintiffs were required to report to NFI's Nazareth facility each day

to perform deliveries for NFI.

28.     Plaintiffs and Class Members were entirely dependent upon NFI for their work, as they were only allowed to perform delivery services for NFI. Plaintiffs and Class Members typically worked five (5) or six (6) days per week, and approximately twelve (12) hours per day. Additionally, the trailers the drivers pulled were owned by NFI and bore NFI's logo. Moreover, the drivers were required to install NFI's GPS system in their trucks so that NFI could monitor their movements.

29.     Although NFI claims that Plaintiffs and Class Members were hired as independent contractors, NFI controlled nearly every aspect of Plaintiffs and Class Members' work. Such control includes, but is not limited to, the following:

   a.    NFI required Plaintiffs and Class Members to comply with the instructions dictated by written and unwritten policies, procedures and directives regarding Plaintiffs and Class Members' duties.

   b.    NFI issued delivery manifests which instruct Plaintiffs and Class Members regarding the order and manner in which deliveries are to be made. For example, Plaintiffs were required to arrive at the NFI warehouses well in advance (usually at least thirty minutes before) they were scheduled to depart on their route each day. Plaintiffs and Class Members could not deviate from the order of delivery nor do they have any say in the amount of deliveries they are to make each day.

   c.    NFI employs managers who have supervisory responsibility over Plaintiffs and Class Members and who could and did assign and direct their work. Plaintiffs and Class Members received calls on a daily basis from NFI's dispatchers directing their work. NFI monitored Plaintiffs' and Class Members' work via a GPS tracking system.

      d.      Plaintiffs and Class Members were required to perform delivery services during fixed hours each day that they worked.

      e.      NFI required Plaintiffs and Class Members to use NFI's scanning/radio devices so that deliveries could be tracked and downloaded to NFI's computer systems.

      f.      NFI required Plaintiffs and Class Members to obtain insurance in certain amounts such as non-trucking liability insurance, occupational accident insurance, physical damage insurance on tractor, and passenger insurance.

      g.      Plaintiffs and Class Members had no control over the amount(s) charged for their delivery services. They did not negotiate with NFI's customers regarding the rates charged for their services.

30. NFI, at its sole discretion, could also make deductions from Plaintiffs and Class Members' statements for damage claims.

31. Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession, or business. Plaintiffs and Class Members were entirely dependent upon NFI for their work and were not allowed to offer their services to any other company.

32. The Independent Contractor Operating Agreement permitted NFI to terminate the drivers for any reason upon thirty (30) days notice.

33. NFI deducted certain expenses directly from Plaintiffs' and Class Members' wages, including deductions for various insurances (such as workers' compensation, trucking liability and cargo), any related insurance claims, the cost of the mandated GPS system, and others. NFI also deducted from Plaintiffs' and Class Members' wages to maintain a $1,500 escrow

account.

34. NFI, upon information and belief, never sought or obtained the Pennsylvania Department of Labor and Industry's approval for the pay deductions that NFI made from its drivers' compensation.

## VI. CLASS ALLEGATIONS

35. Plaintiffs bring this action individually and on behalf of:

> All individuals who were classified as independent contractors while performing deliveries on behalf of Defendants to Trader Joe's stores anywhere on the Eastern Seaboard since 2019, and whose contracts included Texas forum selection and choice of law provisions (the "Class").

36. The requirements of Fed. R. Civ. P. Rule 23 are met in that:

   a. Class Members are so numerous that joinder of all members would be impracticable. During the relevant period it is believed that there are more than 30 Class Members.

   b. NFI engages in a common course of conduct that violated the legal rights of Plaintiffs and Class Members. There are numerous material questions of law or fact common to the Class that will necessarily dominate the Court's analysis of Plaintiffs' claims, including primarily whether Plaintiffs and Class Members were Defendants' employees rather than independent contractors under the PWPCL, whether Defendants made unlawful deductions from Plaintiffs' and Class Members' pay under the PWPCL, and whether Defendants failed to pay Plaintiffs and Class Members for all wages earned under the PWPCL, which also constitutes breach of contract.

   c. Plaintiffs' claims are typical of the claims belonging to absent Class Members. Plaintiffs and Class Members are similarly-situated employees who performed the same

work under the same conditions, were Defendants' employees under the PWPCL, had improper deductions taken out of their pay and were otherwise not paid all wages earned in violation of the PWPCL, and, as a result, suffered the same type of harm.

   d. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class. Plaintiffs have no interests adverse to or in conflict with those of other Class Members.

   e. Plaintiffs have retained competent and experienced class action counsel who will vigorously prosecute this action. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including cases like this one, and will fairly and adequately protect the interests of the Class;

   f. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy. Common questions of law or fact predominate over any questions affecting only individual members, as Plaintiffs seek to remedy a shared legal grievance (*e.g.*, non-payment of wages and improper deductions) and shared harm (*e.g.*, unpaid wages and employment benefits) on behalf of the Class of similarly-situated employees;

   g. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims. The relief sought by individual Class Members is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by NFI's conduct. Individual litigation of the legal and factual issues raised by NFI's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the

Class' claims, achieve economies of scale for the Court and the parties, and result in a binding and uniform adjudication on each issue for every party.

## COUNT I
### Unlawful Deductions in Violation of the Pennsylvania Wage Payment and Collection Law
(43 P.S. § 260.1 *et seq.*)
(All Plaintiffs, Class Action)

37. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

38. Plaintiffs and Class Members are employees entitled to the PWPCL's protections.

39. NFI is an employer covered by the PWPCL's protections.

40. The PWPCL prohibits pay deductions except for those explicitly permitted by law or regulation, none of which apply to this lawsuit. See 43 P.S. § 260.3; 34 Pa. Code § 9.1.

41. NFI violated the PWPCL by requiring: (a) that Plaintiffs and Class Members be subject to deductions from their paychecks for any alleged damage or problem with any delivery; and (b) that Plaintiffs and Class Members be subject to deductions from their paychecks for such costs as workers' compensation insurance, and liability insurance, among others.

42. Pursuant to 43 P.S. §§ 260.9a and 260.10, employers, such as NFI, who intentionally fail to pay an employee wages in conformance with the PWPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## COUNT II
### Unpaid Wages in Violation of the Pennsylvania Wage Payment and Collection Law
### (43 P.S. § 260.1 *et seq.*)
### (All Plaintiffs, Class Action)

43. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

44. Plaintiffs and Class Members are employees entitled to the PWPCL's protections.

45. The PWPCL requires employers to pay all wages earned on regular pay days. See 43 P.S. § 260.3(a).

46. NFI violated the PWPCL by promising to pay drivers for all miles operated by the drivers, but paying Plaintiffs and Class Members for fewer miles than they had actually driven each day.

47. Pursuant to 43 P.S. §§ 260.9a and 260.10, employers, such as NFI, who intentionally fail to pay an employee wages in conformance with the PWPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## COUNT III
### Breach of Contract, Pennsylvania Common Law
### (All Plaintiffs, Class Action)

48. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

49. Plaintiffs and Class Members have all signed nearly identical Independent Contractor Operating Agreements with Defendants.

50. These agreements have been drafted by Defendants and must be construed against them.

51. Defendants have breached their contractual obligations to Plaintiffs and Class Members in violation of Pennsylvania common law by failing to pay them for all of the miles that they have operated as promised in Defendants' Independent Contractor Operating Agreements.

52. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## COUNT IV
### Unjust Enrichment, Pennsylvania Common Law
### (All Plaintiffs, Class Action)

53. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

54. As a result of Defendants' conduct as described above, Defendants unjustly enriched themselves to the detriment of Plaintiffs and Class Members in violation of the common law of Pennsylvania. Such unjust enrichment includes NFI requiring Plaintiffs and Class Members to be subject to deductions for the costs of worker's compensation insurance, liability insurance, and fuel, among others, and shifting NFI's business expenses to Plaintiffs and Class Members.

55. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

\*   \*   \*

### PRAYER FOR RELIEF

Accordingly, Plaintiffs prays the Court find in their favor and enter judgment against Defendants, jointly and severally, and award them the following relief:

(1) Certify this action as a class action under Fed. R. Civ. P. 23;

(2) Grant Plaintiffs and the Class Members damages as proved at trial, including damages for the deductions taken from Plaintiffs' compensation checks and for

15

unpaid wages;

(3) Liquidated damages as provided for by 43 P.S. § 260.10;

(4) Prejudgment interest to the fullest extent permitted under law;

(5) Litigation costs, expenses and attorneys' fees to the fullest extent permitted under law; and

(6) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Drew N. Herrmann
Drew N. Herrmann
Texas Bar No. 24086523
Pamela G. Herrmann
Texas Bar No. 24104030
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229
drew@herrmannlaw.com
pamela@herrmannlaw.com

-and-

Harold Lichten (*pro hac vice* forthcoming)
Sarah Schalman-Bergen (*pro hace vice* forthcoming)
Thomas Fowler (*pro hac vice* forthcoming)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Fax: (617) 994-5801
hlichten@llrlaw.com
ssb@llrlaw.com
tfowler@llrlaw.com

ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS