# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LUIS LOPEZ and AMBIORIS JIMENEZ, Individually and on Behalf of All Others Similarly Situated | § § § § | |
| | § | CIVIL ACTION NO. 3:22-CV-1844-S |
| v. | § | |
| | § | |
| NATIONAL FREIGHT, INC., and NFI INTERACTIVE LOGISTICS, LLC | § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiffs' Amended Motion to Transfer Venue ("Motion") [ECF No. 17] pursuant to 28 U.S.C. § 1404(a). The Court has reviewed the Motion, Defendants' Opposition to Plaintiffs' Amended Motion to Transfer Venue ("Response") [ECF No. 26], and Plaintiffs' Reply in Support of Amended Motion to Transfer Venue ("Reply") [ECF No. 30]. For the following reasons, the Court **DENIES** the Motion.

## I.    BACKGROUND

Plaintiffs Luis Lopez and Ambioris Jimenez filed this putative class action against Defendants National Freight, Inc., and NFI Interactive Logistics, LLC (collectively, "NFI")[1] on August 19, 2022. Compl. [ECF No. 1] ¶ 1. Plaintiffs are truck drivers who contracted with NFI to deliver goods from an NFI facility in Nazareth, Pennsylvania, to Trader Joe's grocery stores located along the East Coast. Mot. 1. Plaintiffs allege, on behalf of themselves and similarly situated drivers, claims for improper pay deductions and unpaid wages under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1 *et. seq.*, breach of contract, and

---

[1] Defendants maintain that National Freight, Inc., is not a proper party to this lawsuit because it did not contract with Plaintiffs during the period of time Plaintiffs' claims arose. Resp. 2 n.2. Because the distinction is not pertinent to this Motion, the Court will refer to Defendants collectively as NFI.

unjust enrichment. Compl. ¶¶ 37-55. The parties dispute whether Plaintiffs were properly classified as independent contractors by NFI, which would exclude them from the PWPCL's protections, or whether Plaintiffs should have been classified as employees. Mot. 1.

In the Motion, Plaintiffs argue that this case should be transferred to the District of New Jersey because two related cases (collectively, "New Jersey Actions"), presided over by Judge Joseph H. Rodriguez, are pending in that court. *Id.* at 1-2. The first case is *Portillo v. National Freight, Inc.*, No. 15-CV-7908-JHR-MJS (D.N.J.), a class action brought against NFI in 2015 by truck drivers for violations of the New Jersey Wage Payment Law. *Id.* at 2. Plaintiffs in this case are also class members in *Portillo*. *Id.* The second case is *Kolev v. National Freight, Inc.*, No. 1:21-CV-15107 (D.N.J.), a putative class action brought against NFI in 2021 by truck drivers for violations of the Illinois Wage Payment and Collections Act. *Id.* at 2-3.

Despite Plaintiffs' wish to litigate this case in New Jersey, they filed suit in this Court because of a forum-selection clause contained within the most recent contracts they signed with NFI:

> This Agreement or any claim or dispute arising from or in connection with this Agreement shall be interpreted in accordance with, and governed by the laws of the United States and of the State of Texas, without regard to the choice-of-law rules of Texas or any other jurisdiction. THE PARTIES FURTHER AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP BETWEEN THE PARTIES, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW (INCLUDING BUT NOT LIMITED TO 49 C.F.R. PART 376), SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN DALLAS COUNTY, TEXAS. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

*Id.* at 5-6.

Prior to 2019, contracts between NFI and its drivers ("Pre-2019 Operating Agreements") contained New Jersey choice-of-law and forum-selection clauses. *Id.* at 2, 14. In 2019, NFI

circulated a new version of their standard contract ("Texas Operating Agreement"), which replaced the New Jersey choice-of-law and forum-selection clauses with the above-quoted Texas choice-of-law and forum-selection clauses. *Id.* at 5-6. NFI required their drivers to sign the Texas Operating Agreement to continue doing business with them. Reply 7. Plaintiffs, who both contracted with and delivered for NFI prior to 2019, signed the new Texas Operating Agreements in 2020. Mot. 7; Pls.' App. in Supp. of Pls.' Am. Mot. to Transfer Venue ("Pls.' App.") [ECF No. 18] 83-161.

Plaintiffs ask the Court to transfer this case in spite of the Texas forum-selection clause, arguing that it is unenforceable due to fraud, overreaching, and fundamental unfairness. Mot. 12-13. According to Plaintiffs, NFI's addition of the Texas forum-selection clause was a "unilateral[]" and "*ex parte*" attempt to "limit the scope of the *Portillo* class outside the supervision of the court." *Id.* at 13-14, 2. In *Portillo*, NFI argued that the Texas forum-selection clause should preclude all class members who signed Texas Operating Agreements from litigating their claims in the District of New Jersey because, in NFI's view, the Texas forum-selection clause superseded all previous forum designations. *Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908-JHR-KMW, 2021 WL 3486894, at *3 (D.N.J. Aug. 9, 2021). The court disagreed, defining the *Portillo* class such that "drivers who signed one or more New Jersey [Pre-2019 Operating Agreements] and one or more Texas [Operating Agreements]—and who otherwise satisfy the criteria for class membership—are class members eligible to recover for injuries sustained under New Jersey law *before* the drivers signed a Texas [Operating Agreement]." *Id.* at *4 (footnote omitted). However, the *Portillo* class does not encompass the claims that are the subject of this lawsuit because they arose *after* Plaintiffs signed the Texas Operating Agreements. *Id.* at *6; *see also* Mot. 2.

The *Portillo* court also found that NFI's failure to alert the drivers, opposing counsel, or the court that the changes to the Pre-2019 Operating Agreement could affect the drivers' rights as potential class members was "misleading and coercive and threatened the fairness of this litigation." *Portillo*, 2021 WL 3486894, at *5. The court went on to express skepticism at NFI's explanation that they included the Texas choice-of-law and forum-selection clauses in the Texas Operating Agreement "as part of a routine update[,]" noting that the update occurred just months after the court's ruling that New Jersey law would govern the *Portillo* plaintiffs' claims and that many of the signatory drivers had "no apparent connection to Texas." *Id.* at *5 n.14.

In the instant case, however, NFI maintains that they have a regional headquarters located in Irving, Texas, and that more of their employees and owner-operators are based out of Texas than New Jersey, which is why they changed the choice-of-law and forum selection clauses in the driver contracts. Resp. 1.

## II.   LEGAL STANDARD

A party seeking transfer under 28 U.S.C. § 1404(a) "must show good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008)) (cleaned up). District courts enjoy "broad discretion in deciding whether to order a transfer," *Volkswagen II*, 545 F.3d at 311 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)), and ordinarily must weigh private and public interest factors to determine whether the movant has established "good cause for transfer based on convenience and justice." *Defense Distributed*, 30 F.4th at 433.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause," which must "be given controlling weight in all but the most exceptional cases."

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). Accordingly, the Supreme Court directs district courts to adjust their Section 1404(a) analysis such that (1) "the party defying the forum-selection clause . . . bears the burden of establishing" that the forum-selection clause should not control; (2) the court "should not consider arguments about the parties' private interests"; and (3) "[w]hen a party bound by a forum-selection clause" files suit in a different forum, a Section 1404(a) transfer of venue "will not carry with it the original venue's choice-of-law rules." *Id.* at 63-64.

## III.   ANALYSIS

Plaintiffs argue that the Texas forum-selection clause is unenforceable and thus should not affect the transfer analysis. Plaintiffs' unenforceability arguments boil down to two main points: (1) the forum-selection clause is fraudulent because NFI "unilaterally changed" the forum provisions without notifying "anyone," and (2) the forum selection clause is "unjust" because "Texas has absolutely no connection to this case." Mot. 13-14. However, the Texas forum-selection clause is enforceable for two reasons. First, Plaintiffs fail to meet their burden to show that the circumstances surrounding the incorporation of the Texas forum selection clause constituted fraud or overreaching. Second, even assuming Plaintiffs' particular claims are not directly connected to Texas and there are related issues already being litigated in New Jersey, it does not follow that enforcement of the Texas forum-selection clause would be unreasonable.

### A. *Forum-Selection Clause*

Federal law governs the enforceability of forum-selection and choice-of-law clauses "whether jurisdiction be based on diversity, a federal question, or some combination of the two." *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). "A forum selection provision in a written contract *is prima facie* valid and enforceable[.]" *Kevlin Servs., Inc. v. Lexington State Bank*,

46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

Unless the opposing party shows that enforcement of the provision would be unreasonable, all

signatories waive "any objection to venue and personal jurisdiction." *Id.*

Because the forum-selection clause at issue is in a written contract, it is prima facie

enforceable. But the presumption of enforceability may be overcome "by a clear showing that the

clause is unreasonable under the circumstances." *Haynsworth*, 121 F.3d at 963 (quoting *M/S

Bremen*, 407 U.S. at 10) (internal quotation marks omitted). A forum-selection clause may be

unreasonable where

> (1) the incorporation of the forum selection clause into the agreement was the
> product of fraud or overreaching; (2) the party seeking to escape enforcement 'will
> for all practical purposes be deprived of his day in court' because of the grave
> inconvenience or unfairness of the selected forum; (3) the fundamental unfairness
> of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the
> forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Plaintiffs fail to meet their burden to show that the Texas forum-selection clause is

fraudulent because their reliance on the *Portillo* court's findings that Defendants' communications

with absent class members about their rights in the *Portillo* case was "misleading and coercive" is

misplaced and because the principles of contract law impose no duty on contracting parties to

explain to each other how an agreement might affect their rights. Plaintiffs also fail to show that

the Texas forum-selection clause is fundamentally unfair because Texas is not so remote or

inconvenient for the Plaintiffs that litigating here would deprive them of a remedy, even though

Plaintiffs have claims to litigate in multiple states.

### i.     *Fraud*

Plaintiffs contend that the incorporation of the Texas forum-selection clause into the Texas

Operating Agreement constituted fraud and overreaching because NFI failed to affirmatively draw

Plaintiffs' attention to the potential effect on Plaintiffs' ability to participate in the *Portillo* action when circulating the draft agreement to its drivers. Mot. 13; Reply 6. In support of this assertion, they cite the *Portillo* court's finding that NFI's inclusion of the Texas forum-selection clause in the Texas Operating Agreement was "misleading and coercive conduct." Mot. 13 (quoting *Portillo*, 2021 WL 3486894, at *5).

However, the legal context of the *Portillo* court's findings differs greatly from the case at bar. In *Portillo*, the court analyzed the fairness of incorporating the Texas forum-selection clause in the context of Federal Rule of Civil Procedure 23(d) and the court's authority to limit communications with absent class members, not the reasonableness of the forum-selection clause according to the principles of contract law. *Portillo*, 2021 WL 3486894, at *5. Importantly, the primary issue in *Portillo* was whether the Texas forum-selection and choice-of-law clauses also operated as a de facto release of any preexisting claims the signatory drivers may have had against NFI under New Jersey law, which could have precluded their participation in the *Portillo* action. *Id.* at *3-5.

The *Portillo* court found that, "even if [it] was not NFI's intention[,]" NFI's failure to alert the drivers, opposing counsel, or the court that the changes reflected in the Texas Operating Agreement could affect the drivers' rights as potential class members in the *Portillo* action was "misleading and coercive and threatened the fairness of *this litigation*." *Id.* at *5 (emphasis added). The *Portillo* court exercised its authority under Rule 23 to define the class and allowed class members to "recover for injuries that they may have suffered under New Jersey law between June 22, 2009 and *the date when they first signed a Texas [Operating Agreement]*." *Id.* at *6 (emphasis added).

7

In other words, while the *Portillo* court found that NFI should have "notif[ied] putative class members that the Texas [Operating Agreement] could or would affect their rights in [*Portillo*]" and declined to interpret the Texas forum-selection clause as a retroactive release of the signatory drivers' preexisting claims under New Jersey law, it did not find that the Texas forum-selection clause was unenforceable with respect to claims arising after a Texas Operating Agreement was signed. *Id.* at \*5. In fact, the way that the *Portillo* court defined the class to exclude claims accruing to drivers after they signed a Texas Operating Agreement displays a tacit acknowledgement that such claims could be subject to the Texas forum-selection clause. *Id.* at \*6. Plaintiffs argue that the reason the *Portillo* court excluded claims arising after drivers signed a Texas Operating Agreement from the class is because of the Texas choice-of-law clause contained within the Texas Operating Agreement, not the Texas forum-selection clause. Reply 8-9. However, Plaintiffs fail to explain why the *Portillo* court would assume that the Texas choice-of-law clause is enforceable,[2] but not the Texas forum-selection clause, especially given that they were both incorporated into the Texas Operating Agreement and circulated to the drivers at the same time.

Plaintiffs fail to cite any cases showing that the "misleading and coercive conduct" found by the *Portillo* court, namely NFI's failure to notify Plaintiffs that the Texas Operating Agreement could affect their rights to participate in the *Portillo* action, renders the Texas forum-selection clause unenforceable. Plaintiffs appear to agree that, in August 2019, NFI circulated the Texas Operating Agreement to all current drivers by email and regular mail. Reply 7. The Texas forum-selection clause appeared conspicuously and in all capital letters on the face of the document.

---

[2] The Court also notes that, during oral argument before the *Portillo* court, counsel for the plaintiffs in that case conceded that "drivers who signed Texas [Operating Agreements] are not entitled to recover under New Jersey law for injuries suffered *after* signing the Texas [Operating Agreements]." *Portillo*, 2021 WL 3486894, at \*4 n.10.

Mot. 5-6. The law requires no further "notification" of the potential effect the Texas forum-selection clause could have had on the drivers' rights. *Haynsworth*, 121 F.3d at 965 ("[I]t is not for [the courts] to impose a duty upon one party to counsel the other as to the risks and benefits of a contract . . . [t]he duty was the plaintiffs' to read the plain terms of the agreement, not [the defendant's] to lecture them about it."). Plaintiffs cite no authority, and the Court has found none, supporting the proposition that an agreement is fraudulent and unenforceable unless the drafter predicts how the agreement could affect the other party's rights in ongoing litigation and affirmatively warns them of those potential effects, no matter the relative level of sophistication of the parties[3] or the nature of the relationship between them.[4]

In fact, the Fifth Circuit has found no fraud in similar circumstances. *See id.* at 964-65. In *Haynsworth*, an underwriter's market circulated an updated version of its preexisting agreement, which added a new forum-selection provision requiring all claims arising under the agreement to be litigated in England, to all of its member underwriters. *Id.* at 959-60. A description of the changes accompanied the new agreement, assuring the member underwriters that "the new

---

[3] Plaintiffs allude to the *Portillo* court's finding that NFI was "the more sophisticated party" to the contract compared to the drivers, but they do not openly argue that the drivers were too unsophisticated to understand the Texas forum-selection clause. Reply 8 n.3 (quoting *Portillo*, 2021 WL 3486894, at *2 n.6); *see also id.* at 10 n.5.

[4] Plaintiffs also imply that NFI's inclusion of the Texas forum-selection clause was impermissibly coercive because NFI conditioned the continuation of their "ongoing business relationship" with the drivers on the execution of the Texas Operating Agreement. Reply 7. The *Portillo* court found that, to the extent NFI argued that the Texas forum-selection and choice-of-law clauses operated as a release of the signatory drivers' preexisting claims in the *Portillo* action, NFI's conduct in threatening to terminate their ongoing business relationship with absent class members unless they waived their rights to participate in the class was "coercive." *Portillo*, 2021 WL 3486894, at *5. However, in the context of a forum-selection clause enforceability determination, Fifth Circuit precedent bars this Court's consideration of this type of "contract of adhesion" argument at this stage because it goes to the agreement as a whole. *See Haynsworth*, 121 F.3d at 965 (rejecting argument that underwriter's market overreached by conditioning underwriters' continued membership in the market on signing agreement with new forum-selection clause because it attacked "the formation of the contract generally," not the forum-selection clause itself (quoting *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996))).

agreement contained 'few variations of substance' from the old" and making no mention of the new forum-selection provision. *Id.* at 964. The Fifth Circuit upheld the forum-selection clause and found that the omission of the effects of the changed forum-selection provision was not fraudulent, in part because the clause itself was "straightforward" and "the plaintiffs are presumed to have known what it said." *Id.* at 965.

*ii.*    *Unfairness*

Plaintiffs argue that the forum-selection clause is unreasonable and unjust because "Texas has absolutely *no* connection to this case" and "it would be highly unreasonable to make Plaintiffs and the putative class in this matter[] litigate part of their claims in New Jersey[] and another part of their claims in Texas," because "nearly all of the same issues" are in contention in the New Jersey Actions. Mot. 13-14. They cite no controlling authority in support of either point.

To Plaintiffs' first point, NFI responds that it is connected to Texas because of their Irving, Texas regional headquarters and they changed the forum-selection clause in their standard driver contracts to designate Texas because more of their employees and owner-operators are based out of Texas than New Jersey. Resp. 1. Quoting *M/S Bremen*, they argue that their choice brought "'vital certainty'" and uniformity to their contracts all over the country. *Id.* at 11 (quoting 407 U.S. at 17). In response to Plaintiffs' second point, NFI again quotes *M/S Bremen*, arguing that "it is 'incumbent on the party seeking to escape his contract'—here Plaintiffs—to show litigating their claims in the selected forum 'will be so gravely difficult and inconvenient' as to, 'for all practical purposes,' deprive them of their day in court." *Id.* (quoting 407 U.S. at 18).

The Court agrees with NFI that Plaintiffs have not shown that Texas is such a distant forum and that litigating part of their claims here and part in New Jersey would be so onerous that holding them to their agreement would be fundamentally unfair to the point of depriving them of a remedy

or of their day in court. *See Haynsworth*, 121 F.3d at 963 (quoting *Carnival Cruise Lines*, 499 U.S. at 595); *see also Hartash Constr., Inc. v. Drury Inns, Inc.*, 252 F.3d 436, 2001 WL 361109, at \*2 (5th Cir. 2001) ("[R]equiring a citizen of one state to travel to another state may cause inconvenience, but does not automatically render a forum-selection clause fundamentally unfair.").

### B. *Public Interest Factors*

Since the Texas Operating Agreements each contain a valid forum-selection clause, the Court must decide whether the case should be transferred using the altered analysis required by *Atlantic Marine*. Under these circumstances, the Court weighs only the Section 1404(a) public interest factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *In re Volkswagen AG* ("Volkswagen I"), 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Because public interest factors "will rarely [justify] a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

#### i.     Court Congestion

The first factor "takes into consideration the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue." *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 712 (N.D. Tex. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Importantly, this is not a private interest factor intended to account for the unique preferences and concerns of the litigants before this Court. Instead, this factor evaluates whether transfer would benefit or burden the efficiency of the judicial system as a whole. *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 865 (E.D. Tex. 2012) (explaining that the

11

public interest factors guard "the public's interest in the fair and efficient administration of justice"). Accordingly, district courts typically determine this factor by comparing judicial district statistics. *See, e.g., id.* at 871; *see also Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009).

Plaintiffs argue that this factor weighs in favor of transfer because "the existence of a related pending case in another district weighs strongly in favor of transfer." Mot. 17. NFI counters that the New Jersey Actions involve different issues, parties, and claims, and because the pending cases are at different stages, there is "no efficiency to be gained" from transferring this case to New Jersey. Resp. 12-14.

The Court finds that none of these arguments go directly to "court congestion" or the speed with which this case can be resolved in the Northern District of Texas as opposed to the District of New Jersey. In fact, in their Reply, Plaintiffs emphasize that if this case were transferred to New Jersey, they would not necessarily seek a consolidated trial. Reply 4. Rather, they explain, the advantage of transfer would be "trying the claims before a court that is already intimately familiar with the parties and claims at issue." *Id.* That argument goes to the private interests of these particular parties, not "the public's interest in the fair and efficient administration of justice." *Frito-Lay*, 867 F. Supp. 2d at 871. Accordingly, the first factor weighs neutrally.

ii.    *Local Interest*

The local interest in having localized interests decided at home does not merely encompass the parties' connections to each forum, but "the significant connections between a particular venue and the events that gave rise to a suit." *Defense Distributed*, 30 F.4th at 435 (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence." *Id.*

Plaintiffs contend that local interests favor trial in New Jersey because that is where NFI's headquarters are located. Mot. 18-19. NFI responds that, during the time relevant to Plaintiffs' claims, Plaintiffs lived and worked in Pennsylvania and multiple other states. Resp. 15. NFI also notes that the putative class in this case likely has members from multiple states. *Id.* Finally, NFI reiterates that it maintains a regional headquarters in Texas and works with more Texas drivers than New Jersey drivers. *Id.*

The Court finds that the second public interest factor weighs neutrally. While the parties appear to agree that Plaintiffs' claims bear little connection to Texas other than through NFI's operations in Irving, Plaintiffs have not demonstrated that the case's connections to New Jersey are much stronger. Rather, Pennsylvania appears to be the center of the business relationship between the parties and the main location most of "the injur[ies], witnesses, and the [Plaintiffs'] residence". *Defense Distributed*, 30 F.4th at 435; Resp. 15. Given that this case involves the local interests of multiple states, Plaintiffs have not met their heavy burden to show the "extraordinary circumstances" required to tip this factor in favor of transfer to their requested forum. *Atl. Marine*, 571 U.S. at 62.

### iii.    Familiarity of the Forum

The third public interest factor weighs "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Supreme Court has noted that "federal judges routinely apply the law of a State other than the State in which they sit" and implied that this factor carries limited weight unless the movant identifies an "exceptionally arcane" feature of the law of the case that could "defy comprehension by a federal judge" sitting in a different forum. *Atl. Marine*, 571 U.S. at 67-68. Nevertheless, to the extent this factor influences the transfer analysis, however slightly, district courts generally assume that federal judges are more familiar with the

state law of the forum in which they sit. *See, e.g., Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 834 (W.D. Tex. 2015).

Plaintiffs assert that the PWPCL will govern this case and tout Judge Rodriguez's "ample familiarity" with this statute. Mot. 19. NFI answers that this factor weighs neutrally at best given that putative class members in this case worked in several different states and Texas common law governs Plaintiffs' breach of contract and unjust enrichment claims. Resp. 14.

The Court finds that this factor weighs against transfer to New Jersey. Plaintiffs do not refute NFI's assertion that Texas law will govern Plaintiffs' breach of contract and unjust enrichment claims, and this Court is likely more familiar with Texas law than most New Jersey courts. Furthermore, assuming Plaintiffs correctly argue that the rest of their claims are governed by *Pennsylvania* law, such claims do little to tip the scales in favor of transfer to *New Jersey*. As for Plaintiffs' assertions about Judge Rodriguez specifically, the Court does not doubt his expertise on the PWPCL. However, Plaintiffs offer no precedent, and the Court found none, to support their proposition that "familiarity of the *forum* with the law that will govern the case" can be interpreted to weigh the expertise of individual judges with a particular body of law. *Volkswagen I*, 371 F.3d at 203 (emphasis added).

   iv.   *Conflict of Laws*

Neither party argues that litigating in either forum would present unnecessary problems of conflict of laws or in the application of foreign law.

In sum, the first two factors, "administrative difficulties flowing from court congestion" and "the local interest in having localized interests decided at home," weigh neutrally. *Volkswagen I*, 371 F.3d at 203. The third factor, "the familiarity of the forum with the law that will govern the

case," weighs against transfer. *Id.* Therefore, the Court finds that public interest in "the fair and efficient administration of justice" weighs against transfer. *Frito-Lay*, 867 F. Supp. 2d at 871.

## IV.    CONCLUSION

The Court finds that the Texas forum-selection clauses are enforceable and that Plaintiffs have failed to overcome the *Atlantic Marine* presumption against using 28 U.S.C. § 1404(a) to circumvent forum selection agreements. *See* 571 U.S. at 62. Given that none of the Section 1404(a) public interest factors weigh in favor of transfer to the District of New Jersey, Plaintiffs have not met their burden to show that this case is one of the "unusual" and "most exceptional" cases that warrant transfer despite the presence of a valid forum selection clause. *Id.* at 64, 63. Accordingly, the Court **DENIES** Plaintiffs' Amended Motion to Transfer Venue [ECF No. 17].

**SO ORDERED.**

SIGNED February 28, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**